TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 26-401 |
| of | : | |
| | : | June 25, 2026 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| HEATHER THOMAS | : | |
| Deputy Attorney General | : | |

Proposed relator JEFFREY CARR applies to this office for leave to sue JACLYN LABARBERA in quo warranto to remove her from her public office on the Anderson Union High School District Board of Trustees. The application asserts that LaBarbera, while serving in that position, assumed a second and incompatible public office as a member of the Shasta County Board of Education, in violation of Government Code section 1099, and by doing so forfeited her seat on the Anderson Union High School District Board.

We conclude there is a substantial legal issue regarding whether LaBarbera is simultaneously holding incompatible public offices. Consequently, and because the public interest will be served by allowing the proposed quo warranto action to proceed, the application for leave to sue is GRANTED.

## BACKGROUND

The Anderson Union High School District (School District) comprises six schools serving approximately 1,500 students in Shasta County.[1]  The School District is governed by a five-member board of elected trustees.[2]

The School District falls within the jurisdiction of the Shasta County Board of Education.  Created by the Education Code, the seven-member Board of Education "provides leadership and citizen input for county educational programs and services operated by the Shasta County Office of Education."[3]  The Board of Education serves as the governing board for the Shasta County Office of Education; it "works with the County Superintendent of Schools to establish the direction and priorities for the County Office."[4]  The Shasta County Office of Education, led by the County Superintendent, "ensures that all Shasta County school districts are fiscally responsible, providing financial oversight, accounting and payroll services."[5]  The Office "also provides teacher, administrator, and instructional support services," as well as "direct services to students," such as special education and after school programs.[6]

Jaclyn LaBarbera is currently serving on both the Anderson Union High School District Board of Trustees (School District Board) and the Shasta County Board of

---

[1] Anderson Union High School District, About, https://www.auhsd.net/page/about-auhsd (as of June 25, 2026); Shasta County Office of Education (Office of Education), Shasta County Schools, District and School Information, https://www.shastacoe.org/shasta-county-schools/district-schools (as of June 25, 2026).

[2] Ed. Code, § 35010, subd. (a); Anderson Union High School District, Members, https://andersonunionhighschooldistrict.community.diligentoneplatform.com/portal/members.aspx?id=16 (as of June 25, 2026).

[3] Office of Education, Board of Education, Trustee Areas, https://www.shastacoe.org/office-of-education/boe (as of June 25, 2026); see Ed. Code, § 1000, subd. (a); Cal. Const., art. IX, § 7.

[4] Office of Education, Board of Education, County Board Jurisdiction, https://www.shastacoe.org/office-of-education/boe (as of June 25, 2026); see also Shasta County Board of Education, County Board Policy 2119: County Superintendent of Schools (Board Policy 2119); *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 207, fn. 4; 104 Ops.Cal.Atty.Gen. 66, 71 (2021).

[5] Office of Education, Office of Education, https://www.shastacoe.org/office-of-education (as of June 25, 2026).

[6] *Ibid.*; see also California County Superintendents, Statutory Functions of County Superintendents of Schools and County Boards of Education (2025 Edition), I. Overview of County Office of Education Governance (Functions of County Superintendents), p. 3.

26-401

Education (County Board of Education).  LaBarbera was first elected to the School District Board as a trustee in November 2022.[7]  She holds that seat until December 2026.[8]  In November 2024, while she was still serving on the School District Board, LaBarbera was elected to a four-year term on the County Board of Education.[9]

The applicant here, Jeffrey Carr, asserts that LaBarbera is simultaneously serving in two offices that are legally incompatible under Government Code section 1099.  Section 1099 provides that a public officeholder who assumes a second, incompatible public office thereby forfeits the first office held, and that this forfeiture is enforceable through an action in quo warranto.  Carr seeks our permission to sue LaBarbera in quo warranto to remove her from the School District Board.  LaBarbera replies that we should deny the request for several reasons:  The offices are not legally incompatible, no prior Attorney General opinion or judicial decision has ever held these offices to be incompatible, no actual conflict has arisen during the time she has served in both offices, and the public interest "strongly favors permitting continued service."[10]

## ANALYSIS

Quo warranto is a civil action used, among other purposes, to challenge an incumbent public official's right or eligibility to hold a given public office.[11]  This form of action is codified in section 803 of the Code of Civil Procedure, which provides that "[a]n action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[12]

---

[7] Defendant Jaclyn LaBarbera's Verified Statement of Facts in Support of Opposition to Defendant's Application to Sue in Quo Warranto (Defendant's Statement of Facts), ¶ 2.

[8] Anderson Union High School District, Meetings, https://andersonunionhighschooldistrict.community.diligentoneplatform.com/portal/members.aspx?id=16 (as of June 25, 2026).

[9] Shasta County Office of Education, Board of Education, https://www.shastacoe.org/office-of-education/boe (as of June 25, 2026); Defendant's Statement of Facts, ¶ 3.

[10] Defendant Jaclyn LaBarbera's Opposition to Plaintiff's Application to Sue in Quo Warranto (Opposition), p. 1.

[11] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[12] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 873; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

Where a private party seeks to pursue a quo warranto action in superior court, that party (known in this context as a relator, or proposed relator) must first apply for and obtain the Attorney General's consent to do so. In determining whether to grant that consent, we do not attempt to resolve the merits of the controversy. Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the proposed relator has raised a substantial issue of law or fact that warrants judicial resolution; and (3) whether authorizing the quo warranto action will serve the public interest.[13] Here, the answer to all three questions is "yes," and we therefore grant leave to sue.

## 1. Availability of Quo Warranto Remedy

Section 1099(b) directs that the forfeiture of an incompatible public office is "enforceable pursuant to Section 803 of the Code of Civil Procedure." As described above, section 803 authorizes an action in the nature of quo warranto to remove a person who unlawfully holds any public office. Under section 1099(a), a public office includes membership on a government board or body, such as a county board of education or a school district board of trustees. Thus, quo warranto is an available and appropriate remedy here.

## 2. Substantial Issue Regarding Incompatibility

We next examine whether there is a substantial issue of law or fact as to the incompatibility of the two public offices in question. Section 1099(a) provides that "[a] public officer, including, but not limited to, an appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible."[14] That prohibition "springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[15] As relevant here, two offices are incompatible if "there is a possibility of a significant clash of duties or loyalties between the offices," or if either office "may audit, overrule, . . . or exercise supervisory powers over the other office."[16]

---

[13] *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[14] The prohibition does not apply if the "simultaneous holding of the particular offices is compelled or expressly authorized by law." (Gov. Code, § 1099, subd. (a).) LaBarbera has not cited a law that compels or expressly authorizes the simultaneous holding of the offices at issue here. (See also *post*, fns. 51-53 and related discussion in text.)

[15] 68 Ops.Cal.Atty.Gen. 337, 339 (1985).

[16] Gov. Code, § 1099, subd. (a)(1)-(2).

4

Upon a finding that two offices are legally incompatible, "a public officer shall be deemed to have forfeited the first office upon acceding to the second."[17]

To find that two offices are incompatible based on a significant clash of duties or loyalties, a conflict need not have actually occurred; it is enough that a conflict *may* occur in the regular operation of the statutory plan.[18] Nor is it necessary for a clash of duties or loyalties to occur in all or in the greater part of the official functions.[19] Indeed, "[o]nly one potential significant clash of duties or loyalties is necessary to make offices incompatible."[20] When two offices are deemed incompatible, the conflicted officeholder may not escape the effects of the doctrine by choosing not "'to perform one of the incompatible roles. The doctrine was designed to avoid the necessity for that choice.'"[21]

We have previously found positions on various boards of education to be incompatible offices where, like here, their jurisdictions overlap.[22] For example, we concluded that membership on both a county board of education and a charter school district board would present several significant clashes of duties or loyalties.[23] A county board of education, we explained, "interacts with all charter schools under its jurisdiction through a general public oversight role. Responsibility for charter school oversight within a county is shared among the county board of education, the county office of education, and the county superintendent."[24] The "county superintendent is charged with monitoring and investigating charter schools within the county," while a county board of education sets the superintendent's salary and approves the superintendent's budget.[25] We concluded that, "through its own powers and because it controls the budget (and in

---

[17] *Id.*, subd. (b).

[18] 98 Ops.Cal.Atty.Gen. 94, 96 (2015).

[19] *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 641-642.

[20] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).

[21] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296.

[22] 104 Ops.Cal.Atty.Gen., *supra*, at p. 70; see also 68 Ops.Cal.Atty.Gen. 171 (1985) (high school district board seat and elementary school district board seat within the same district are incompatible offices); 31 Ops.Cal.Atty.Gen. 170 (1958) (member of a county board of education and member of State Board of Education are incompatible offices); Cal.Atty.Gen., Indexed Letter, No. I.L. 75-22 (Feb. 18, 1975) (elementary school district board seat incompatible with membership on either community college district board or high school district board); see generally Ed. Code, § 72104.

[23] 104 Ops.Cal.Atty.Gen., *supra*, at p. 70.

[24] *Id.* at p. 71, footnotes omitted.

[25] *Ibid.*

some cases the appointment) of the county superintendent, a county board of education is significantly involved in the public oversight of charter schools within its jurisdiction. These oversight responsibilities present the possibility of 'clashing duties or loyalties' should one individual serve on the boards of both entities."[26]

For similar reasons, there is at least a substantial question whether a person serving simultaneously on the County Board of Education and the School District Board could face a significant clash of duties or loyalties. Similar to charter schools, oversight of county school districts is shared among the county board of education, the county office of education, and the county superintendent.[27] Shasta County's Superintendent is the chief executive officer of the County Office of Education, as well as the professional advisor to the County Board of Education.[28] A county superintendent directly oversees "the fiscal and academic affairs of school districts," and has the authority "to audit the expenditures and internal controls of school districts . . . , conduct studies related to future school conditions and needs, enter into specified contracts, and employ certificated and classified county school personnel."[29] The county superintendent also coordinates educational programs across school districts and can provide services directly to school districts.[30]

The county board of education, in turn, is the governing body of the county office of education.[31] The board of education adopts rules governing the administration of the county office of education, approves its budget, and, in some circumstances, appoints the superintendent.[32] We foresee several potentially significant clashes of duties and loyalties through the county board of education's relationships with the county office of education and the county superintendent. As mentioned above, a county superintendent

---

[26] *Id*. at pp. 71-72.

[27] See *id*. at p. 71.

[28] Board Policy 2119, *supra*.

[29] Functions of County Superintendents, *supra*, at p. 11; 101 Ops.Cal.Atty.Gen. 56, 60-61 (2018), citing Ed. Code, §§ 1241.5, 1250-1251, 1258-1259, 1260, subd. (a), 1276, 1293, 1311.

[30] Ed. Code, §§ 1700, 1702.

[31] Office of Education, Board of Education, County Board Jurisdiction, https://www.shastacoe.org/office-of-education/boe (as of June 25, 2026); see *Today's Fresh Start, Inc. v. Los Angeles County Office of Education*, *supra*, 57 Cal.4th at p. 207, fn. 4.

[32] Ed. Code, §§ 1042, subds. (a), (b), (e), 1040, subd. (c); Office of Education, Board of Education, County Board Jurisdiction, https://www.shastacoe.org/office-of-education/boe (as of June 25, 2026).

6

can provide services to school districts.[33]  So, for example, a county superintendent may choose to coordinate courses of study, guidance services, health services, school library services, special education, and attendance activities among county school districts.[34]  A county superintendent may also provide services to school districts in screening and directing teachers.[35]  And the superintendent may prescribe specified payroll procedures to be followed by county districts.[36]

Significantly, each example in the previous paragraph explicitly requires consent of the county board of education.[37]  This presents "the possibility of 'clashing duties or loyalties' should one individual serve on" both the county board of education and a school district board.[38]  In deciding how to allocate resources to individual districts or among multiple districts in the county, a member of the county board of education who also serves on a school district board could face conflicting loyalties if the interests of the county and the district diverged.  In these and other situations, "a dual officeholder elected to represent the best interests of both" entities could face a disqualifying conflict.[39]

Further conflicts could arise here because the County Board of Education acts as the appellate body for challenges to a school district expulsion decision or a district's denial of a student's request to transfer schools.[40]  The Board of Education's authority in this area raises a substantial question under Government Code section 1099(a)(1), which provides that offices are incompatible if one office "may audit, overrule, . . . or exercise supervisory powers over the other."  In fact, LaBarbera herself acknowledges she could

---

[33] See, e.g., Ed. Code, §§ 1721, 1740, 1750, 1760.

[34] Ed. Code, § 1703.

[35] Ed. Code, § 1941.

[36] Ed. Code, § 42646.

[37] Ed. Code, §§ 1703, 1720, 1721, 1740, 1750, 1760, 1941, 42646.

[38] 104 Ops.Cal.Atty.Gen., *supra*, at p. 72.

[39] 104 Ops.Cal.Atty.Gen. 58, 63 (2021).

[40] See Ed. Code, §§ 48919 (expulsion), 46601 (denial of school transfer).  In expulsion appeals, the County Board of Education has the authority "to review the procedures followed by the school district prior to expelling a pupil to determine whether the Education Code was complied with, whether 'due process' was afforded, and whether there is evidence to support the local governing board's finding and decision supporting the expulsion." (Office of Education, Board of Education, Expulsion Appeals, https://www.shastacoe.org/office-of-education/boe (as of June 25, 2026).)  In school transfer appeals, the "Board of Education will determine whether to grant or deny" the appeal "after reviewing the relevant facts." (*Id.*, Interdistrict Attendance Appeals.)

7

face a conflict with respect to the County Board of Education's role hearing appeals of district expulsion decisions.[41]  LaBarbera argues that she could manage the conflict through recusal, by declining to participate in appeals concerning School District students.[42]  However, as noted above, a dual officeholder cannot avoid the incompatible office prohibition by declining to perform one of the incompatible roles.[43]

LaBarbera further argues that no prior Attorney General opinion or judicial decision has ever held these offices to be incompatible, and that no actual conflict has arisen during the time she has served in both offices.  But Government Code section 1099 provides a general standard for legal incompatibility.[44]  Applying that standard here, there is a substantial question whether these particular offices are incompatible, even if the issue has not previously been addressed.  And, as explained above, the incompatible offices doctrine does not depend upon the emergence of an actual conflict; it is enough that a conflict *may* occur in the regular operation of the statutory plan.[45]

"[O]nly one significant clash of duties and loyalties is required to render offices incompatible."[46]  Because we foresee several potential significant clashes of duties and loyalties here, we conclude there is a substantial issue of law or fact that warrants judicial resolution.

### 3.  Public Interest in Favor of Authorizing Suit

We further conclude that it is in the public interest for this matter to be resolved through a quo warranto suit.[47]  We generally view the need for judicial resolution of a substantial question of fact or law as a sufficient "public purpose" to warrant granting leave to sue, absent countervailing circumstances such as pending litigation.[48]

LaBarbera argues that granting leave to sue would not be in the public interest for three reasons.  First, because her term on the School District Board ends later this year, she contends that granting the application would be costly, would "serve no public purpose and would instead disrupt ongoing educational governance."[49]  We disagree.

---

[41] Opposition, p. 7.

[42] *Ibid*.

[43] 67 Ops.Cal.Atty.Gen., *supra*, at p. 414.

[44] See Gov. Code, § 1099, subd. (a)(1)-(3).

[45] See 98 Ops.Cal.Atty.Gen., *supra*, at p. 96.

[46] 101 Ops.Cal.Atty.Gen., *supra*, at p. 69.

[47] See Gov. Code, § 1099, subd. (b).

[48] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

[49] Opposition, p. 7.

There are months left in LaBarbera's term with the School District Board, and thus the question of conflicting loyalties remains ongoing. We have granted previous quo warranto applications where a similar amount of time remained on the challenged term.[50]

Second, LaBarbera contends that allowing the application to go forward would "have significant statewide implications" because school district trustees also sit on the county board of education in counties that have only a single school district.[51] It is true that in single-district counties, the Education Code expressly requires the school district's governing board to also serve as the county board of education.[52] However, as noted above, section 1099 does not apply when the simultaneous holding of the particular offices is compelled by law.[53] Here, we are not aware of any law that expressly or impliedly allows the same person to serve on both boards at issue in the circumstances of this application.

Finally, LaBarbera argues the application appears to be "motivated by personal or political considerations rather than a genuine concern for the public interest."[54] Ordinarily, we do not attempt to assess the motivation of individual relators.[55] Our quo warranto regulations state that "any person" may file an application.[56] And in "deciding whether to grant or deny leave to sue, we focus upon the public interest as our paramount concern."[57] Here, allowing the proposed quo warranto action to proceed will serve the public interest in ensuring that public officials avoid conflicting loyalties in performing their public duties.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[50] See, e.g., 105 Ops.Cal.Atty.Gen. 101, 108 (2022) (six months remaining on challenged term); 105 Ops.Cal.Atty.Gen. 111, 119-120 (2022) (seven months remaining); 109 Ops.Cal.Atty.Gen. __ (2026) (Opn. No. 26-601) (five months remaining).

[51] Opposition, p. 8.

[52] Ed. Code, § 1000, subd. (a).

[53] Gov. Code, § 1099, subd. (a) (offices are not legally incompatible if "simultaneous holding of the particular offices is compelled or expressly authorized by law"); see *ante*, fn. 14.

[54] Defendant's Statement of Facts, ¶ 13.

[55] 106 Ops.Cal.Atty.Gen. 14, 20 (2023); 95 Ops.Cal.Atty.Gen. 67, 75, fn. 39 (2012); 75 Ops.Cal.Atty.Gen. 112, 116-117 (1992).

[56] Cal. Code Regs., tit. 11, § 1.

[57] 75 Ops.Cal.Atty.Gen., *supra*, at pp. 116-117.